UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER CARDINAL, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>JOHN LUPO, et al.,<br><br>    Defendants. | Case No. 18-cv-00272-JCS<br><br>**ORDER DENYING MOTIONS FOR ATTORNEYS' FEES AND COSTS AND MOTION FOR NEW TRIAL**<br><br>Re: Dkt. Nos. 209, 211, 212 |

## I. INTRODUCTION

This case arises from the sale of a kitchen remodeling business. Plaintiffs Christopher Cardinal and Kitchen Experts of California, Inc. asserted claims for intentional misrepresentation, negligent misrepresentation, and breach of contract against Defendants John Lupo and Kitchen Fantastic, Inc., among other claims that were not presented to the jury at trial.[1] Lupo asserted a counterclaim for breach of contract. After the Court largely denied Defendants' motions for summary judgment, *see* Order Re Mot. for Sanctions & Mots. for Summ. J. (dkt. 134),[2] a jury found Lupo liable for damages of $250,000 for intentional misrepresentation, did not reach the alternative claim for negligent misrepresentation, and found in Cardinal's favor on Cardinal's claim for breach of contract but assessed no damages for that claim. *See* Jury Verdict (dkt. 197). The jury found Cardinal not liable on Lupo's counterclaim. *Id.*

---

[1] The parties agreed for simplicity to present their claims at trial as between Cardinal and Lupo individually, with any judgment to be entered jointly and severally either against Cardinal and Kitchen Experts or against Lupo and Kitchen Experts. *See* Dec. 6, 2019 Civ. Trial Minutes (dkt. 182). This order follows that convention and at times uses "Cardinal" to refer collectively to Christopher Cardinal and Kitchen Experts, and "Lupo" to refer to collectively to John Lupo and Kitchen Fantastic. The distinctions between the two plaintiffs and between the two remaining defendants are not relevant to the outcome of the present motions.
[2] *Cardinal v. Lupo*, No. 18-cv-00272-JCS, 2019 WL 4450859 (N.D. Cal. Sept. 17, 2019).

Cardinal now moves for a new trial on the issue of damages for his intentional misrepresentation claim, and Cardinal and Lupo each move for attorneys' fees and costs, with each arguing that he "prevailed" for the purpose of the fee-shifting provision of the Stock Purchase Agreement that governed the sale. The Court finds the motions suitable for resolution without oral argument and VACATES the hearing set for April 10, 2020. For the reasons discussed below, all three motions are DENIED, the jury's verdict stands, and each party shall bear his own attorneys' fees and costs.[3]

## II. MOTION FOR NEW TRIAL

### A. Legal Standard

Under Rule 59(a)(1) of the Federal Rules of Civil Procedure, a court "may, on motion, grant a new trial on all or some of the issues." Fed. R. Civ. P. 59(a)(1). A court may grant a new trial "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). A new trial is appropriate where, "'having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371–72 (9th Cir. 1987) (quoting a treatise). The court is not required to view the trial evidence in the light most favorable to the verdict when it considers a Rule 59(a) motion. *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014). Instead, "the district court can weigh the evidence and assess the credibility of the witnesses." *Id.* "Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice," *id.* (citing *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)), but mere "[d]oubts about the correctness of the verdict are not sufficient grounds for a new trial," *Landes Constr.*, 833 F.2d at 1372, and "a district court may not grant or deny a new trial merely because it would have arrived at a different verdict," *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999).

---

[3] The parties have consented to the undersigned magistrate judge presiding over the case for all purposes pursuant to 28 U.S.C. § 636(c).

2

**B. Cardinal Is Not Entitled to a New Trial on Damages**

The jury awarded Cardinal $250,000 on his claim for intentional misrepresentation. The Court instructed the jury to calculate damages for that claim by "determin[ing] the fair market value of what Christopher Cardinal gave [i.e., the $2,000,000 purchase price that Cardinal paid for Kitchen Experts] and subtract[ing] from that amount the fair market value of what he received [i.e., Kitchen Experts]," and that Cardinal could "also recover amounts that he reasonably spent in reliance on John Lupo's false representation if those amounts would not otherwise have been spent." *See* Jury Instr. (dkt. 189) No. 31. Cardinal contends that the jury failed to follow the Court's instructions and the law in assessing damages for Lupo's intentional misrepresentation because "[t]here was no evidence that the damages caused by Lupo's fraud was other than $1,580,297.53." Mot. for New Trial (dkt. 212) at 1.

Cardinal reaches that figure based on his expert witness Steven Boyles's testimony that the fair market value of the company was as most $590,000 (or $1,400,000 less than the $2,000,000 purchase price) and Lupo's expert witness's acknowledgment that Lupo failed disclose trade debt totaling $170,297.35.[4] *Id.* at 3–4. Cardinal suggests that the jury might have reached its $250,000 damages award by treating Cardinal's testimony that he had at one point offered to purchase Kitchen Experts for $1,750,000 as representing the fair value of the company. *Id.* at 6. According to Cardinal, such a conclusion is not supported by that testimony because Cardinal was prepared to pay $1,750,000 only if he received certain documents to conduct due diligence. *Id.* at 4–5.

While a jury's award of damages must generally fall within the range supported by the evidence, the jury need not accept a particular figure offered by an expert witness, or even reach a total that "fall[s] between the extremes of expert appraisals without regard to other testimony that may bear on the [disputed] valuation." *4.0 Acres of Land*, 175 F.3d at 1141. Lupo argues that the because the jury was free to believe any amount—or none—of Boyles's testimony, it could reasonably have determined that the true value of Kitchen Experts was $1,750,000 and Cardinal's

---

[4] Cardinal's claim that the correct measure of damages should have included 53 cents appears to be a typographical error transposing those digits from Lupo's expert's acknowledgment of undisclosed debt. The discrepancy is not material.

3

damages were only $250,000. Opp'n to New Trial (dkt. 219) at 5–7. Lupo also argues that tax returns entered in evidence showing higher net income for the years before the sale, as well as his own expert's testimony discussing the significance of those tax returns, could support a lower damages award, or even a conclusion that Cardinal paid less than the fair value of the company and thus suffered no damages. *Id.* at 7–8.[5] Cardinal objects to that approach, arguing that the methodology of estimating value from the net income stated in the tax returns was not presented to the jury, none of Lupo's proposed calculations produce the same damages figure as the jury, and the tax returns were "utterly discredited" by the "undisputed fact that Lupo falsely reported his payroll practices to the IRS in each of those years." Reply re New Trial (dkt. 222) at 10–11.

Lupo is correct that both parties' expert witnesses testified that a twenty percent risk-based rate of return was reasonable to apply here, which results in a valuation equivalent to five times the annual net income, and that Cardinal himself testified to applying effectively the same formula to determine the most he was willing to pay for the company. *See* Opp'n to New Trial at 7; Trial Tr. at 348:4–9 (Cardinal), 849:14–850:1 (Boyles), 1083:22–1084:7 (Lupo's expert witness Robert Anderson). Lupo's expert witness Robert Anderson also testified that the tax returns from before the sale, which state larger net income values and at least two of which were admitted as evidence,[6] would be a more reliable source than the figures that Cardinal's expert witness used from after the sale. Trial Tr. at 1086:8–1087:2.[7] Even if the jury determined that Lupo was

---

[5] Aside from his substantive arguments supporting the jury's damages figure, Lupo also contends that Cardinal's motion is untimely under Rule 59(e) (despite the parties' stipulation and the Court's order allowing Cardinal to file the motion when he did) and that a new trial could not feasibly be limited to only the issue of damages. While the Court does not reach those arguments, Cardinal is likely correct that Rule 6(b)'s stricture that a "court must not extend the time to act under Rules . . . 59(b), (d), and (e)" is subject to waiver, and that Lupo's stipulation to the later filing date constitutes waiver. *See* Reply re New Trial (dkt. 222) at 2–6 (citing, *e.g.*, *Legg v. Ulster County*, 820 F.3d 67, 78–79 (2d Cir. 2016)).

[6] Lupo's present arguments rely on the tax returns from 2014 (Exhibit 71), 2015 (Exhibit 73), and 2016 (Exhibit 78). Although Exhibits 71 and 73 were admitted, Exhibit 78 does not appear to have been admitted. *See* Master Index (dkt. 183-1) at 5. Neither party addresses this issue, but the Court concludes that the 2014 and 2015 tax returns are sufficient to support the jury's award of damages.

[7] Cardinal moved to strike, and the Court instructed the jury to disregard, Anderson's subsequent opinion as to the value of the business that he would derive from those tax returns. Trial Tr. at 1087:3–18. Cardinal did not object at trial to Anderson's opinion on the relative merits of the tax returns as compared to the data used by Cardinal's expert Boyles.

4

unscrupulous, it might have credited Anderson's testimony that business owners usually seek to minimize the net income reported to the IRS in order to minimize their tax liability, and thus might reasonably have determined that the income stated in the tax returns represented a conservative valuation of the business. *See id.* at 1086:19–23. Using the net income from the 2014 tax return alone would result in a valuation of $1,112,605 and damages of $887,395; while using the net income from the 2015 tax return alone would result in a valuation of $2,088,505, indicating that Cardinal paid less than the company was worth and suffered no damages.

Neither Lupo's failure to argue in closing that the jury could multiply net income from a tax return by five to reach a valuation, nor the fact that the jury's figure does not perfectly align with any particular calculation offered by either party, supports setting aside the jury's award and granting a new trial. The multiply-by-five method endorsed by both experts is straightforward and well within the jury's competence. As for the particular value that the jury reached, "it is well-established under California law that while the *fact* of damages must be clearly shown, the *amount* need not be proved with the same degree of certainty, so long as the [finder of fact] makes a reasonable approximation." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1443 (9th Cir. 1990). Accordingly, although Cardinal is correct that the jury could not permissibly set damages based on mere speculation, the fact that the damages award does not precisely correspond to any method of calculation proposed by either party is not a significant cause for concern. Assuming that the jury credited the repeated testimony that quintupling a company's net income provides a reasonable estimate of value, it might reasonably have approximated $350,000 as Kitchen Expert's expected net income (one-fifth of the $1,750,000 valuation that corresponds to the $250,000 damages award) based on whatever weighting the jury considered appropriate for the $222,521 net income reported for 2014, the $417,701 net income reported for 2015, and the $117,000 net income that Boyles assessed based on 2018 data, as well as any other evidence that the jury might have deemed relevant to this inquiry.

The Court declines to set aside the jury's damages award and DENIES Cardinal's motion for a new trial.

## III. MOTIONS FOR ATTORNEYS' FEES

### A. Legal Standard for Contractual Attorneys' Fees

Although parties to litigation generally bear their own attorneys' fees, contractual clauses awarding fees to the prevailing party in actions on the contract are enforceable under California law. *See* Cal. Civ. Code § 1717(a); Cal. Civ. Proc. Code § 1021. Courts applying California law will also respect broader agreements between parties to award fees to the prevailing party in tort claims as well as contract claims, and apply ordinary principles of contract interpretation to determine whether a particular attorneys' fees clause encompasses claims beyond those to enforce the contract. *See, e.g.*, *Gil v. Mansano*, 121 Cal. App. 4th 739, 742–44 (2004). While the prevailing party is generally "the party who recovered a greater relief in the action on the contract," a "court may also determine that there is no party prevailing on the contract." Cal. Civ. Code § 1717(b)(1).[8]

### B. Neither Party Is Entitled to Attorneys' Fees

The attorneys' fees provision of the Stock Purchase Agreement governing the sale of Kitchen Experts states:

> If any action or proceeding shall be commenced to interpret or enforce this Agreement or any right arising in connection with this Agreement, the prevailing party in such action or proceeding shall be entitled to recover from the others the reasonable attorneys' fees, costs and expenses incurred by such prevailing party in connection with such action or proceeding or negotiation to avoid such action or proceeding.

Stock Purchase Agreement § 10.6.[9] Each party argues that he is the "prevailing party" under that provision. Lupo contends that the provision does not encompass any of Cardinal's claims except

---

[8] Although section 1717 is limited by its terms to contract claims and does not govern fees for tort claims even where such fees arise from a provision of a contract, *see Gil*, 121 Cal. App. 4th at 723, this Court is aware of no authority depriving it of discretion to determine similarly that no party prevailed on tort claims for which a contractual agreement would award fees to the prevailing party. The history of California courts finding no prevailing party in appropriate cases under section 1717 before it was amended to provide explicitly for such discretion tends to support a court's discretion to so find even in the absence of specific statutory authority. *See Hsu*, 9 Cal. 4th at 874 ("This provision, allowing the court to find that there was no party prevailing on the contract for purposes of contractual attorney fees, was declaratory of existing law.")

[9] The Stock Purchase Agreement appears in multiple placed in the record, including as Exhibit 1 to the January 17, 2020 declaration of Cardinal's counsel J. Craig Crawford (dkt. 211-1), and was admitted in evidence at trial.

6

his claim for breach of contract, on which the jury awarded Cardinal no damages. *See* Lupo's Fees Mot. (dkt. 209) at 1–4. Lupo does not address his own contract claim, on which the jury found Cardinal not liable. Cardinal argues that he is the prevailing party because he recovered under his claim for intentional misrepresentation, which he contends was based on express warranties of the Stock Purchase Agreement, citing decisions by California courts construing such claims as falling within arguably similar contractual fees provisions. *See generally* Cardinal's Fees Mot. (dkt. 211). Lupo argues that Cardinal's misrepresentation claim does not fall within the fees provision because his complaint alleged only misrepresentations predating the contract, and because any ambiguity in the contract should be construed against Cardinal as the drafter of the provision at issue. *See, e.g.*, Opp'n to Cardinal's Fees Mot. (dkt. 220) at 3–6. Each party also disputes the reasonableness of the amount of fees claimed by his opponent. *Id.* at 8–9; Opp'n to Lupo's Fees Mot. (dkt. 216) at 7–8.

The parties' briefs do not address in detail the Court's discretion to award fees to neither party—Lupo does not address it at all, while Cardinal includes only a brief argument that such an outcome could be appropriate in his opposition to Lupo's motion. The California Supreme Court has described that discretion as follows:

> As one Court of Appeal has explained, "[t]ypically, a determination of no prevailing party results when both parties seek relief, but neither prevails, or when the ostensibly prevailing party receives only a part of the relief sought." (*Deane Gardenhome Assn. v. Denktas* (1993) 13 Cal.App.4th 1394, 1398, 16 Cal.Rptr.2d 816.) By contrast, when the results of the litigation on the contract claims are *not* mixed—that is, when the decision on the litigated contract claims is purely good news for one party and bad news for the other—the Courts of Appeal have recognized that a trial court has no discretion to deny attorney fees to the successful litigant. Thus, when a defendant defeats recovery by the plaintiff on the only contract claim in the action, the defendant is the party prevailing on the contract under section 1717 as a matter of law. (See, e.g., *Melamed v. City of Long Beach* (1993) 15 Cal.App.4th 70, 84, 18 Cal.Rptr.2d 729; *Deane Gardenhome Assn. v. Denktas, supra,* 13 Cal.App.4th 1394, 1398, 16 Cal.Rptr.2d 816; *Elms v. Builders Disbursements, Inc., supra*, 232 Cal.App.3d 671, 674–675, 283 Cal.Rptr. 515; *Manier v. Anaheim Business Center Co.* (1984) 161 Cal.App.3d 503, 505–509, 207 Cal.Rptr. 508.) Similarly, a plaintiff who obtains all relief requested on the only contract claim in the action must be regarded as the party prevailing on the contract for purposes of attorney fees under section 1717. (E.g., *Texas Commerce Bank v. Garamendi* (1994) 28 Cal.App.4th 1234, 1247, 34 Cal.Rptr.2d 155; *Smith v. Krueger* (1983) 150 Cal.App.3d 752, 757,

> 198 Cal.Rptr. 174.)
>
> [. . .]
>
> Accordingly, we hold that in deciding whether there is a "party prevailing on the contract," the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by "a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions." (*Bank of Idaho v. Pine Avenue Associates* (1982) 137 Cal.App.3d 5, 15, 186 Cal.Rptr. 695.)

*Hsu v. Abbara*, 9 Cal. 4th 863, 875–76 (1995).

"If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." *Scott Co. of Cal. v. Blount, Inc.*, 20 Cal. 4th 1103, 1109 (1999). Even so, a court may abuse that discretion if it finds no prevailing party where the results are "*so* lopsided that, even under an abuse of discretion standard, it [is] unreasonable to say the [party with a greater degree of success] was not the prevailing party." *See De la Cuesta v. Benham*, 193 Cal. App. 4th 1287, 1290 (2011).

Regardless of whether Cardinals' misrepresentation claim is treated as falling within the scope of the contractual attorneys' fees provision, this is not a lopsided case. If the Court looks only to the claims for breach of contract, each party brought such a claim, and each party recovered nothing on those claims. While the jury found that Lupo breached the contract, it awarded Cardinal no damages for such breach. And while neither party's briefs meaningfully address Lupo's claim for breach of contract, the jury found Cardinal not liable on that claim. California courts have acknowledged that cases where "both parties seek relief, but neither prevails" are a "typical" example of when a court may find that neither party is entitled to recover its attorneys' fees. *See Hsu*, 9 Cal. 4th at 875 (quoting *Deane Gardenhome*, 13 Cal. App. 4th at 1398)). Accordingly, the Court concludes that no party is entitled to attorneys' fees under Civil Code section 1717 based solely on the contract claims.

Cardinal has at least a colorable argument that his misrepresentation claim falls within the scope of the attorneys' fees provision. Regardless of whether Cardinal can be said to have based

8

his claim on representations specifically included in the contract as compared to earlier representations by Lupo,[10] reliance was a necessary element of Cardinal's claim, and his reliance took the form of purchasing Kitchen Experts pursuant to the Stock Purchase Agreement. Accordingly, there is some appeal to Cardinal's position that the "right" at issue for that claim "ar[ose] in connection with [the] Agreement." *See* Stock Purchase Agreement § 10.6.

The Court need not decide that issue, however, because even if the Court considers the misrepresentation claim—either in conjunction with the contract claims, or on its own because it is not governed by section 1717, *see Gil*, 121 Cal. App. 4th at 723—the result is too equivocal to award fees to either party. The Court has discretion to find no prevailing party where "the ostensibly prevailing party receives only a part of the relief sought." *Hsu*, 9 Cal. 4th at 875 (quoting *Deane Gardenhome*, 13 Cal. App. 4th at 1398). Although a substantial sum, Cardinal's award of $250,000 represents less than one-sixth of the $1,580,297.53 total that Cardinal now claims he should recover. *See* Mot. for New Trial at 1. Cardinal's motion for a new trial on damages—proposing to throw out his award and try again—strongly suggests that he has not achieved his litigation objectives. *See Hsu*, 9 Cal. 4th at 876 (stating that courts should compare a party's award to "the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources"). The Court also notes that the award is significantly lower than the attorneys' fees and costs that each party claims to have reasonably accrued in trying the case. *See* Cardinal's Fees Mot. at 25 (seeking a total of $1,062,327.09); Lupo's Fees Mot. at 10 (seeking a total of $448,533). Cardinal's marginal success on his claim for intentional misrepresentation therefore would not warrant an award of attorneys' fees to either party, and the Court declines to resolve whether the attorneys' fees provision of the Stock Purchase Agreement encompasses that claim.

### C. Costs Under Rule 54

Having concluded that neither party prevailed for the purpose of attorneys' fees and costs

---

[10] The Court notes that while Lupo is correct that the allegations of Cardinal's complaint focus on earlier misrepresentations, Lupo did not propose any jury instruction limiting the representations that the jury should consider for the purpose of this claim.

under California law, the Court turns to Rule 54 of the Federal Rules of Civil Procedure, which provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party," Fed. R. Civ. P. 54(d)(1), and 28 U.S.C. § 1920, which lists categories of expenses that a court "may tax as costs."

"Although Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920 presume costs will be awarded to the prevailing party, the district court may decline to award costs." *Anderson v. State Farm Mut. Auto. Ins. Co.*, 766 F. App'x 432, 434 (9th Cir. 2019) (citing *Draper v. Rosario*, 836 F.3d 1072, 1087 (9th Cir. 2016)). Whether to award costs is left to the discretion of the district court, and a court may decline to do so based on factors including, but not limited to: "'(1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties.'" *Draper*, 836 F.3d at 1087 (quoting *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014)).

For the same reasons addressed above in the context of California law, the Court concludes that the minimal recovery and "closeness . . . of the issues in the case" warrant declining to award costs under Rule 54, regardless of which party could be said to have "prevailed" for the purpose of that rule.

## IV. CONCLUSION

For the reasons discussed above, all three pending motions are DENIED. The jury's verdict stands, and each party shall bear his own attorneys' fees and costs.

**IT IS SO ORDERED.**

Dated: April 7, 2020

JOSEPH C. SPERO
Chief Magistrate Judge