1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    CHRISTOPHER CARDINAL, et al.,              Case No.  18-cv-00272-JCS

8                  Plaintiffs,
                                                **ORDER DENYING MOTION FOR**
9           v.                                  **RELIEF FROM JUDGMENT**

10   JOHN LUPO, et al.,                          Re: Dkt. No. 230

11                 Defendants.

12

13   **I.      INTRODUCTION**

14          This case arose from the sale of a kitchen remodeling business.  Plaintiffs Christopher

15   Cardinal and Kitchen Experts of California, Inc. asserted claims for intentional misrepresentation,

16   negligent misrepresentation, and breach of contract against Defendants John Lupo and Kitchen

17   Fantastic, Inc., among other claims that were not presented to the jury at trial.[1]  Lupo asserted a

18   counterclaim for breach of contract.  After the Court largely denied Defendants' motions for

19   summary judgment, *see* Order Re Mot. for Sanctions & Mots. for Summ. J. (dkt. 134),[2] a jury

20   found Lupo liable for damages of $250,000 for intentional misrepresentation, did not reach the

21   alternative claim for negligent misrepresentation, and found in Cardinal's favor on Cardinal's

22   claim for breach of contract but assessed no damages for that claim.  *See* Jury Verdict (dkt. 197).

23   The jury found Cardinal not liable on Lupo's counterclaim for breach of contract.  *Id.*  After trial,

24   _____

25   [1] The parties agreed for simplicity to present their claims at trial as between Cardinal and Lupo
     individually, with any judgment to be entered jointly and severally either against Cardinal and
26   Kitchen Experts or against Lupo and Kitchen Fantastic.  *See* Dec. 6, 2019 Civ. Trial Minutes (dkt.
     182).  This order follows that convention and at times uses "Cardinal" to refer collectively to
27   Christopher Cardinal and Kitchen Experts, and "Lupo" to refer collectively to John Lupo and
     Kitchen Fantastic.  The distinctions between the two remaining plaintiffs and between the two
28   remaining defendants are not relevant to the outcome of the present motions.
     [2] *Cardinal v. Lupo*, No. 18-cv-00272-JCS, 2019 WL 4450859 (N.D. Cal. Sept. 17, 2019).

*United States District Court*
*Northern District of California*

1    the Court denied a motion by Cardinal for a new trial on damages and denied both parties'

2    motions for attorneys' fees and costs.  Order Denying Mots. for Attorneys' Fees & Costs & Mot.

3    for New Trial ("Fees Order," dkt. 226).[3]

4         Cardinal now moves for relief from judgment under Rule 60(b) of the Federal Rules of

5    Civil Procedure, asking the Court to reconsider its ruling that Cardinal is not entitled to recover his

6    attorneys' fees under the terms of the parties' contract or his costs under Rule 54 of the Federal

7    Rules of Civil Procedure.  The Court found the matter suitable for resolution without oral

8    argument and vacated the hearing set for June 12, 2020.  For the reasons discussed below,

9    Cardinal's motion is DENIED, and the judgment stands as entered.[4]

10   **II.    BACKGROUND**

11        **A.    The Court's Previous Order on Fees and Costs**

12        The Court previously held that neither party was entitled to recover his attorneys' fees or

13   costs.  *See* Fees Order at 6–10.  Although the Stock Purchase Agreement provided for an award of

14   fees to "the prevailing party" in "any action or proceeding shall be commenced to interpret or

15   enforce this Agreement or any right arising in connection with this Agreement," the Court held

16   that neither party "prevailed" for the purpose of California Civil Code section 1717—which

17   governs contractual fee-shifting provisions in the context of contract claims—noting that each

18   party asserted a claim for breach of contract and each recovered nothing on that claim.  *Id.* at 6–8.

19   The Court noted that California courts have long recognized courts' discretion to find no

20   prevailing party under that statute where results are mixed or equivocal, both before and after the

21   statute was amended to specifically provide for such discretion.  *See id.* at 7–9.

22        The Court concluded that Cardinal had "at least a colorable argument that his

23   misrepresentation claim falls within the scope of the attorneys' fees provision," and that as a tort

24   rather than contract claim it was not governed by section 1717.  *Id.* at 8–9.  In the absence of

25

26   ---

27   [3] *Cardinal v. Lupo*, No. 18-cv-00272-JCS, 2020 WL 1694355 (N.D. Cal. Apr. 7, 2020).  Citations herein to the Court's previous order refer to page numbers of the version filed in the Court's ECF docket.

28   [4] The parties have consented to the undersigned magistrate judge presiding over the case for all purposes pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

authority to the contrary, however, and in light of California courts' having found no prevailing party under section 1717 even before it was amended to specifically so allow, the Court held that it had discretion to find no prevailing party on the misrepresentation claim as well.  *See id.* at 6 n.8. Because Cardinal recovered only a small fraction of the damages to which he claimed he was entitled in his motion for a new trial, and significantly less than the fees either party incurred to try the case, the Court held that Cardinal also did not "prevail" on that claim.  *Id.* at 9.

With respect to costs, the Court noted that the Ninth Circuit has recognized a trial court's discretion to award costs to neither party under Rule 54(d) of the Federal Rules of Civil Procedure, and declined to award costs "[f]or the same reasons addressed above in the context of [attorneys' fees under] California law," including "the minimal recovery and 'closeness . . . of the issues in the case.'"  *Id.* at 9–10 (quoting *Draper v. Rosario*, 836 F.3d 1072, 1087 (9th Cir. 2016)).

### B.   The Parties' Arguments

Cardinal moves under Rule 60(b)(1) for relief from a final order of the Court due to "'mistake, inadvertence, surprise, or excusable neglect,'" arguing that he is entitled to such relief because the Court's previous order "'rested upon an erroneous view of the law.'"  Mot. (dkt. 230) at 8 (quoting Fed. R. Civ. P. 60(b)(1); *Henson v Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 443 (9th Cir. 2019)).  According to Cardinal, because section 1717 does not apply to contractual provisions awarding fees to prevailing parties in tort claims, the Court lacked authority to determine that no party prevailed.  *Id.* at 9.  Instead, Cardinal contends that the plain language of the contract at issue encompasses Cardinal's misrepresentation claim (as the Court's previous order assumed without deciding), and that it requires the Court to choose a prevailing party because it refers to "the" prevailing party rather than "a" prevailing party, and does not include the words "if any" or some other explicit acknowledgment that no party might prevail.  *Id.* at 9–12.

Cardinal argues that in the Court's interpretation of the fee-shifting provision as applied to a tort claim outside the scope of section 1717, the Court erred in relying on cases considering section 1717 even before its amendment to specifically allow for finding no prevailing party, because section 1717 served generally to elevate equitable considerations over the terms of a written agreement in a manner not otherwise permitted for contract interpretation.  *Id.* at 12.

Cardinal contends that his significant recovery of $250,000 renders him the prevailing party and entitled to recover his fees. *Id.* at 12–14. As for costs under Rule 54, Cardinal acknowledges that a district court has discretion to decline to award them, but argues that this Court lacked a sufficient basis to depart from the presumption that costs will be awarded to the party in whose favor judgment is entered. *Id.* at 14–15.

Defendants filed two separate opposition briefs: one on behalf of Lupo himself, and one on behalf of Kitchen Fantastic. Lupo's brief argues that Cardinal failed to identify a particular basis for relief under a specific subpart of Rule 60(b), even though he acknowledges that Cardinal asserted "mistake" under Rule 60(b)(1). Lupo Opp'n (dkt. 231) at 1–2. Lupo contends that Cardinal hasn't shown the sort of clear error or manifest injustice necessary to depart from a previous holding under the doctrine of law of the case, *id.* at 3, and that the Court's reasoning that it had discretion to find no prevailing party was correct, *id.* at 6. Lupo also argues that the denial of fees should remain undisturbed for a different reason than stated in the Court's previous order: in Lupo's view, Cardinal's tort claim for misrepresentation does not fall within the scope of the Stock Purchase Agreement's fee-shifting clause. *Id.* at 4–6. Lupo contends that the Court's denial of costs fits within the framework for appropriate exercise of discretion recognized by the Ninth Circuit. *Id.* at 7–8.

Kitchen Fantastic's separate opposition brief argues only that even if the Court reversed its previous decision, Kitchen Fantastic could not be held liable for attorneys' fees under the Stock Purchase Agreement because it was not a party to that agreement, nor for costs because it was not named in Cardinal's complaint as a defendant to any of the claims ultimately presented to the jury. *See generally* Kitchen Fantastic Opp'n (dkt. 233).

Cardinal's counsel appears to have overlooked Lupo's opposition brief and only read Kitchen Fantastic's. Cardinal's reply argues that "[i]n their opposition, defendants Lupo and Kitchen Fantastic make a single point: Kitchen Fantastic cannot be liable for attorney fees." *See* Reply (dkt. 235) at 1. Cardinal concedes that point, disputes the contention that Kitchen Fantastic cannot be held liable for costs, and argues that Lupo waived any other argument in opposition. *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

## III.    ANALYSIS

### A.    Legal Standard for Rule 60(b)

Rule 60(b)(1) of the Federal Rules of Civil Procedure permits a district court to "relieve a party or its legal representative from a final judgment, order, or proceeding" on account of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).  The Ninth Circuit has held that a district court may grant a motion under that rule not only to address a party's excusable mistake, but also to correct the court's own error of law. *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1024 (9th Cir. 2004); *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999).[5]

### B.    Attorneys' Fees Under California Law

Although parties to litigation generally bear their own attorneys' fees, contractual clauses awarding fees to the prevailing party in actions on the contract are enforceable under California law. *See* Cal. Civ. Code § 1717(a); Cal. Civ. Proc. Code § 1021.  Courts applying California law will also respect broader agreements between parties to award fees to the prevailing party in tort claims as well as contract claims, and apply ordinary principles of contract interpretation to determine whether a particular attorneys' fees clause encompasses claims beyond those to enforce the contract. *See, e.g.*, *Gil v. Mansano*, 121 Cal. App. 4th 739, 742–44 (2004).

#### 1.    Discretion to Find No Prevailing Party Under Section 1717

While the prevailing party is generally "the party who recovered a greater relief in the action on the contract," section 1717 specifically provides that a "court may also determine that there is no party prevailing on the contract." Cal. Civ. Code § 1717(b)(1).

---

[5] Cardinal contends that even "[a]bsent legal error, a court should still reconsider a discretionary ruling that clearly arrived at the wrong result." Mot. at 8 (citing *Henson v Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 443 (9th Cir. 2019)).  The case on which Cardinal relies did not concern a motion under Rule 60(b)(1), but instead under Rule 60(b)(6).  Cardinal has not asserted that rule or argued that this case presents the sort of "extraordinary circumstances" warranting application of that catch-all provision. *See Henson*, 943 F.3d at 443–44.  Moreover, the passage he cites addresses "discretionary" rulings only in the context of appellate review of how the district court exercised its discretion *in considering the motion for relief from judgment*; it does not address the district court reconsidering its own *earlier* discretionary decision.  Regardless, assuming for the sake of argument that Rule 60(b)(1) permits a court to reconsider an exercise of its discretion, or that Cardinal's motion could be construed as seeking relief under Rule 60(b)(6), the Court would stand by its previous conclusions.

The California Supreme Court has described a trial court's discretion to find no prevailing party under section 1717 as follows:

> As one Court of Appeal has explained, "[t]ypically, a determination of no prevailing party results when both parties seek relief, but neither prevails, or when the ostensibly prevailing party receives only a part of the relief sought." By contrast, when the results of the litigation on the contract claims are *not* mixed—that is, when the decision on the litigated contract claims is purely good news for one party and bad news for the other—the Courts of Appeal have recognized that a trial court has no discretion to deny attorney fees to the successful litigant. Thus, when a defendant defeats recovery by the plaintiff on the only contract claim in the action, the defendant is the party prevailing on the contract under section 1717 as a matter of law. Similarly, a plaintiff who obtains all relief requested on the only contract claim in the action must be regarded as the party prevailing on the contract for purposes of attorney fees under section 1717.
>
> [. . .]
>
> Accordingly, we hold that in deciding whether there is a "party prevailing on the contract," the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by "a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions."

*Hsu v. Abbara*, 9 Cal. 4th 863, 875–76 (1995) (citations omitted without ellipses).

Under section 1717, "[i]f neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." *Scott Co. of Cal. v. Blount, Inc.*, 20 Cal. 4th 1103, 1109 (1999). Even so, a court may abuse that discretion if it finds no prevailing party where the results are "*so* lopsided that, even under an abuse of discretion standard, it [is] unreasonable to say the [party with a greater degree of success] was not the prevailing party." *See De la Cuesta v. Benham*, 193 Cal. App. 4th 1287, 1290 (2011).

### 2.    Discretion to Find No Prevailing Party Outside of Section 1717

The only claim on which Cardinal recovered damages, for intentional misrepresentation, falls outside the scope of section 1717, because it was not a claim "on the contract."

United States District Court
Northern District of California

1
2
3
4
5

> Civil Code section 1717 does not apply to tort claims; it determines which party, if any, is entitled to attorney[ ] fees on a contract claim only. [Citations.] As to tort claims, the question of whether to award attorney [ ] fees turns on the language of the contractual attorney[ ] fee provision, i.e., whether the party seeking fees has 'prevailed' within the meaning of the provision and whether the type of claim is within the scope of the provision. [Citation.] This distinction between contract and tort claims flows from the fact that a tort claim is not 'on a contract' and is therefore outside the ambit of section 1717.

6

*Gil*, 121 Cal. App. 4th at 743 (quoting *Exxess Electronixx v. Heger Realty Corp.*, 64 Cal. App. 4th

7

698, 705 (1998)) (alterations in original).  This Court previously held, however, that the "history

8

of California courts finding no prevailing party in appropriate cases under section 1717 before it

9

was amended to provide explicitly for such discretion tends to support a court's discretion to so

10

find even in the absence of specific statutory authority."  Fees Order at 6 n.8 (quoting *Hsu v.*

11

*Abbara*, 9 Cal. 4th 863, 874 (1995), for the proposition that the relevant provision of section 1717,

12

"allowing the court to find that there was no party prevailing on the contract for purposes of

13

contractual attorney fees, was declaratory of existing law").

14

Neither party here has cited a case squarely addressing whether a trial court may find that

15

no party prevailed for the purpose of contractual attorneys' fees clauses governing tort claims,

16

which fall outside the scope of section 1717, where a plaintiff recovers only a relatively small

17

portion of the damages sought.  The California Supreme Court has discussed the nature of the

18

inquiry, but in the context of a dismissal, rather than a partial recovery:

19
20
21
22
23
24
25
26
27

> Are the seller defendants "prevailing part[ies]" within the meaning of their own agreement? To answer this question, we apply the ordinary rules of contract interpretation. "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.) The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.) Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning. (See, e.g., *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal. 3d 800, 807, 180 Cal. Rptr. 628, 640 P.2d 764; *Crane v. State Farm Fire & Cas. Co.* (1971) 5 Cal. 3d 112, 115, 95 Cal. Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089.)" (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821–822, 274 Cal. Rptr. 820, 799 P.2d 1253.)

28

United States District Court
Northern District of California

> The purchase agreement does not define the term "prevailing party," nor is there any extrinsic evidence indicating that the parties ascribed to it a particular or special meaning. As used in California statutes, the term has more than one technical meaning. For purposes of the cost statutes, the term "prevailing party" includes a party in whose favor a judgment of dismissal has been entered. (Code Civ. Proc., § 1032, subd. (a)(4).) Under subdivision (b)(2) of Civil Code section 1717, however, there is no prevailing party when the action has been voluntarily dismissed. Because "prevailing party" has no settled technical meaning as including or excluding a party in whose favor a dismissal has been entered, we will assume, in the absence of evidence to the contrary, that the parties understood the term in its ordinary or popular sense.

> Giving the term "prevailing party" its ordinary or popular sense, the seller defendants are the prevailing parties in this litigation. Plaintiffs' objective in bringing this litigation was to obtain the relief requested in the complaint. The objective of the seller defendants in this litigation was to prevent plaintiffs from obtaining that relief. Because the litigation terminated in voluntary dismissal with prejudice, plaintiffs did not obtain by judgment any of the relief they requested, nor does it appear that plaintiffs obtained this relief by another means, such as a settlement. Therefore, plaintiffs failed in their litigation objective and the seller defendants succeeded in theirs. Giving the term "prevailing party" its ordinary or popular meaning, the seller defendants are the "prevailing part[ies]" under their agreement with plaintiffs, and, if we consider only the rules of contract law, they are entitled to recover the amounts they incurred as attorney fees in defending all claims asserted in this action.

*Santisas v. Goodin*, 17 Cal. 4th 599, 608–09 (1998) (footnote omitted).

Like the agreement at issue here, the contract in *Santinas* called for awarding fees to "the prevailing party," 17 Cal. 4th at 603, not "a" prevailing party or "the prevailing party, if any."  It is perhaps notable that the *Santinas* court did *not* state that such language requires a determination that one party or the other *must* prevail.  If such a requirement existed, it might have simplified the court's task of determining whether the defendant who obtained dismissal was "the prevailing party."

### 3.   No Party Prevailed in This Case

The attorneys' fees provision of the Stock Purchase Agreement governing the sale of Kitchen Experts states:

> If any action or proceeding shall be commenced to interpret or enforce this Agreement or any right arising in connection with this Agreement, the prevailing party in such action or proceeding shall be entitled to recover from the others the reasonable attorneys' fees, costs and expenses incurred by such prevailing party in connection

8

1    with such action or proceeding or negotiation to avoid such action or
     proceeding.

2    Stock Purchase Agreement § 10.6.[6]

3         As in *Santisas*, the parties' agreement does not define "prevailing party," and the parties

4    have offered no extrinsic evidence to suggest that the term had any specific meaning to them at the

5    time they signed the agreement.  Moreover, just as discussed in that case for a party who obtains a

6    dismissal, the term "the prevailing party" has no settled meaning under California law as to

7    whether a Court might find no such party where a plaintiff obtains only a relatively small

8    percentage of the damages sought.  In the context of section 1717, statutory language requiring the

9    court to award fees to "the prevailing party" nevertheless permits a determination that no party

10   prevailed, while under section 1032(a)(4) of the Code of Civil Procedure (governing awards of

11   litigation costs other than fees), "the party with a net monetary recovery" is the prevailing party.

12   Neither of those statutes applies to the attorneys' fees at issue here,[7] but their divergent uses of the

13   term in question indicate that it "has no settled technical meaning" that must govern its

14   interpretation.  *See Santisas v. Goodin*, 17 Cal. at 609.  The Court therefore must "assume, in the

15   absence of evidence to the contrary, that the parties understood the term in its ordinary or popular

16   sense."  *Id.*

17        Cardinal has offered no authority for his position that an ordinary reading of the words "the

18   prevailing party" in the Stock Purchase Agreement would require that there be such a party in

19

20   _____

21   [6] The Stock Purchase Agreement appears in multiple places in the record, including as Exhibit 1 to
     the January 17, 2020 declaration of Cardinal's counsel J. Craig Crawford (dkt. 211-1), and was
     admitted in evidence at trial.

22   [7] To the extent that *Maynard v. BTI Group, Inc.*, 216 Cal. App. 4th 984, 994 (2013), could be read
     as holding that section 1032 governs the interpretation of "prevailing party" within a contractual

23   fee-shifting clause for tort claims, this Court respectfully disagrees, and finds "convincing
     evidence" that the California Supreme Court would likely reject that approach.  *See Owen ex rel.*

24   *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983) (addressing the degree of deference
     federal courts afford to intermediate state court decisions interpreting state law).  As discussed

25   above, the California Supreme Court in *Santisas* acknowledged a provision of section 1032
     governing costs in cases where a defendant obtained dismissal, but rather than apply that provision

26   to attorneys' fees, held that it must determine the ordinary meaning of the contract.  17 Cal. 4th at
     608–09.  Regardless, the appellate court in *Maynard* ultimately held that a plaintiff who obtained

27   the full balance she sought, "which was the sole objective of her lawsuit," was the prevailing party
     under *both* section 1032 *and* the plain meaning of the contract, even though she prevailed on only

28   one of the overlapping legal theories she asserted.  216 Cal. App. 4th at 994.  Here, Cardinal
     recovered only a relatively small percentage of the damages he sought.

United States District Court
Northern District of California

9

1    every case.  Common sense suggests there are circumstances where no party could reasonably be

2    said to prevail in litigation.  As an example, suppose two birdwatchers compete to photograph the

3    largest bird in a given week, and enter a contract under which the loser will pay the winner $500.

4    At the end of the week, each birder believes their own photograph shows a larger bird, and when

5    both refuse to pay under the contract, each brings a claim for breach seeking $500 in damages.  If

6    the court determines that the requirement to pay is void under an anti-gambling law, there would

7    be no reasonable basis to conclude that either birder "prevailed" in an "ordinary or popular" sense

8    of that word.  Neither the article "the," nor the lack of an explicit qualifier like "if any," prevents a

9    commonsense understanding that in at least some cases, no party prevails.

10        The Court also stands by its previous conclusion based on California courts' interpretation

11   of section 1717 before it was amended to specifically allow for finding no prevailing party.  As the

12   California Supreme Court noted in *Hsu*, that added provision "was declaratory of existing law."

13   *Hsu*, 9 Cal. 4th at 874.  The *Hsu* court cited as examples the pre-amendment decisions *Kytasty v.*

14   *Godwin*, 102 Cal. App. 3d 762 (1980), and *Nasser v. Superior Court*, 156 Cal. App. 3d 52 (1984).

15        The entirety of *Kytasty*'s discussion of attorneys' fees reads as follows:

16              Finally, we are called upon to grant attorneys' fees since this action
              was brought by Kytasty under her contract of purchase. Under Civil
17              Code section 1717, attorneys' fees are available to the prevailing
              party and, as expressed by the trial court, we are unable to determine
18              who is the prevailing party, if there is one. The judgment as well as
              this opinion must be considered good news and bad news to each of
19              the parties, and in good conscience we cannot say attorneys' fees
              should be awarded either for the trial or for this appeal.
20

21   *Kytasty*, 102 Cal. App. 3d at 774.  The *Nasser* court considered an amendment enacted since

22   *Kytasty* (but still before the amendment that explicitly allowed courts to find no prevailing party)

23   providing that the court, upon a motion, "shall determine who is the prevailing party" even in a

24   case that did not proceed to a final judgment.  *Nasser*, 156 Cal. App. 3d at 57.  The court held that

25   the amendment was directed to reversing unrelated precedent holding that section 1717 did not

26   apply in a case dismissed for failure to prosecute, and did not alter *Kytasty*'s holding:

27              Since the Legislature undoubtedly intended to correct the final
              judgment problem, and there is no discernible intent to impose a
28              mandatory duty to declare one prevailing party in cases where the

United States District Court
Northern District of California

10

1

2

> victory and loss is evenly divided, we conclude the word "shall," as used in this context, is mandatory only to the extent that it requires the court to make a "determination" as to the prevailing party.

3

4

5

> Our conclusion is supported by another rule of statutory construction that words used in a statute should be read in light of their ordinary meaning with particular attention to the avoidance of absurd consequences. (*In re Karpf* (1970) 10 Cal. App. 3d 355, 366, 88 Cal. Rptr. 895.)

6

7

8

9

10

11

> Under subdivision (b)(1) of section 1717 the court *must* make a determination of the prevailing party upon a proper notice and motion. However, the use of the word "shall" in this context does not strip the court of its power to determine that neither party prevailed. Requiring a determination for one party or the other in every case would encourage absurd results for if the court determines that neither party actually prevailed it would be unreasonable to award attorney fees. The fact that neither party prevailed in a given case is a result of the very "determination" which subdivision (b)(1) of section 1717 commands the court to make. Having made its determination, the court has satisfied the legislative mandate.

12   *Nasser*, 156 Cal. App. 3d at 59.

13           Cardinal argues that these pre-amendment section 1717 cases should not inform this

14   Court's analysis of the Stock Purchase Agreement's fee-shifting provision because "ever since the

15   law's inception . . . 'section 1717 [had] command[ed] that equitable considerations must rise over

16   formal ones' in enforcing contractual-attorney-fee clauses," while courts are afforded no such

17   latitude in considering parties' agreements outside the scope of section 1717.  Mot. at 12 (quoting

18   *Int'l Indus., Inc. v. Olen*, 21 Cal. 3d 218, 224 (1978), *superseded on other grounds as stated in*

19   *Santisas*, 17 Cal. 4th at 622) (brackets in original).  But neither *Kytasty* nor *Nasser*—nor, for that

20   matter, *Hsu*'s summary of them—suggests that they considered the statutory language awarding

21   fees to "the prevailing party" to be contrary to their holding and only overcome by unrelated

22   equitable concerns.  To the contrary, *Nasser* held that reading the words of the statute "in light of

23   their ordinary meaning with particular attention to the avoidance of absurd consequences"

24   supported a court's discretion to find that no party prevailed.  *Nasser*, 156 Cal. App. 3d at 59.

25           Those same principles apply to this Court's task of contract interpretation.  *See* Cal. Civ.

26   Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear

27   and explicit, and does not involve an absurdity.").  The Court is not persuaded that, applying the

28   same principles to substantially similar language awarding fees to "the prevailing party,"

United States District Court
Northern District of California

United States District Court
Northern District of California

1  California courts would reach the opposite conclusion from *Nasser* and hold that one party must

2  always prevail.

3      Accordingly, the Court stands by its previous conclusion that it had discretion to determine

4  that no party prevailed using the same framework applicable to such determinations under section

5  1717.  The Court also stands by its exercise of that discretion.  Cardinal's $250,000 recovery

6  constitutes less than one-sixth of the $1,580,297.53 total that he believed he was entitled to a new

7  trial to obtain, and less than fifteen percent of the purchase price of Kitchen Experts.  The parties'

8  settlement positions also support a conclusion that the ultimate result was equivocal: Cardinal's

9  damages were five times the $50,000 that Lupo offered to settle the case during trial (or in

10  absolute terms, $200,000 more), but only one-seventh of his own $1,750,000 settlement demand—

11  one and a half million dollars less than he would have accepted.  *See* Pohls Decl. (dkt. 232) ¶ 4.

12  The Court further notes that the game was not nearly worth the candle, with the damages awarded

13  coming to less than one quarter of Cardinal's own attorneys' fees to litigate the case, and less than

14  a sixth of the parties' combined attorneys' fees.  *See* Cardinal's Fees Mot. (dkt. 211) at 25

15  (seeking fees totaling of $1,062,327.09); Lupo's Fees Mot. (dkt. 209) at 10 (seeking fees totaling

16  of $448,533).  Comparing "the relief awarded . . . with the parties' demands on those same claims

17  and their litigation objectives," *Hsu*, 9 Cal. 4th at 876, neither party prevailed, and neither is

18  entitled to recover attorneys' fees under the terms of the Stock Purchase Agreement.

19      **C.   Costs Under Rule 54**

20      Whether to award costs under Rule 54(d) of the Federal Rules of Civil Procedure is left to

21  the discretion of the district court, and a court may decline to do so based on factors including, but

22  not limited to: "'(1) the substantial public importance of the case, (2) the closeness and difficulty

23  of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited

24  financial resources, and (5) the economic disparity between the parties.'"  *Draper v. Rosario*, 836

25  F.3d 1072, 1087 (9th Cir. 2016) (quoting *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236,

26  1247–48 (9th Cir. 2014)).

27      Cardinal acknowledges that a "a district court has discretion to deny costs despite [the]

28  assumption" that costs will be awarded to the party in whose favor judgment is entered.  Mot. at

1    15 (citing *Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000) (en

2    banc).  Such discretion appears on the face of Rule 54, which provides for exceptions to the

3    general rule that "costs . . . should be allowed to the prevailing party," including where "a court

4    order provides otherwise." Fed. R. Civ. P. 54(d)(1).  Although the Court must identify reasons

5    why a particular case warrants an exception, *Ass'n of Mexican-Am. Educators*, 231 F.3d at 591,

6    the discretion afforded by the rule is "substantial," *Richmond v. Southwire Co.*, 980 F.2d 518, 520

7    (8th Cir. 1992).

8         In *Association of Mexican-American Educators*, an en banc panel of the Ninth Circuit

9    affirmed a decision to award no costs.  The court summarized the district court's basis for doing so

10   as follows:

11        (1) the case "involve[s] issues of substantial public importance,"
12        specifically "educational quality, interracial disparities in economic
           opportunity, and access to positions of social influence"; (2) there is
13        great economic disparity between Plaintiffs, who are individuals and
           "small nonprofit educational organizations," and the State of
14        California; (3) the issues in the case are close and difficult; [footnote]
           and (4) Plaintiffs' case, although unsuccessful, had some merit, as
15        evidenced by the 1995 modification of the [test used for certifying
           teachers].

16        [Footnote:] Although we have not previously approved that reason for
           denying costs, other circuits have. *See Teague v. Bakker*, 35 F.3d 978,
17        997 (4th Cir. 1994); *White & White, Inc. v. American Hosp. Supply
           Corp.*, 786 F.2d 728, 733 (6th Cir. 1986). Other reasons for denying
18        costs that circuit courts have approved include: the "nominal" or
           partial nature of the prevailing party's recovery, *see Richmond v.
19        Southwire Co.*, 980 F.2d 518, 520 (8th Cir. 1992); *Howell Petroleum
           Corp. v. Samson Resources Co.*, 903 F.2d 778, 783 (10th Cir. 1990);
20        and the good faith of the losing party, *see Teague*, 35 F.3d at 997;
           *White*, 786 F.2d at 730. . . . .

21

22   *Ass'n of Mexican-Am. Educators*, 231 F.3d at 592 & n.15.  The Tenth Circuit's decision in *Howell

23   Petroleum*, which the Ninth Circuit's footnote cites approvingly, held that a district court "was

24   within its discretion to refuse to award costs to a party which was only partially successful," where

25   that party recovered only $86,836.55 of the $727,184.73 it had sought.  *Howell Petroleum*, 903

26   F.2d at 780, 783.

27        A few years later, the Ninth Circuit squarely held that a party's partial success can support

28   a denial of costs, at least in a contract case:

13

> The first reason focuses on simple disparity between the amount sought and the amount recovered; the third reason expands the focus somewhat by pointing out the amount recovered was reduced because two affirmative defenses had been successful. We hold today that these reasons can support a discretionary decision to deny costs to a prevailing party in a contract action. Our holding is consistent with the decisions of other circuits in approving such reasons. [Citations omitted, including *Howell*.] We caution, however, that our approval of these reasons is limited to contract actions, in which damages are often more readily calculable than, for example, in tort actions. We do not address the propriety of these reasons in non-contract actions.

*Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1023 (9th Cir. 2003). While Cardinal is not strictly wrong in citing *Champion Produce* for the proposition that "it is unsettled whether a plaintiff's partial recovery for a tort claim can ever justify denying costs," Mot. at 15, the misrepresentation claim at hand involved damages based on the difference between the purchase price and fair market value of a business—not any kind of intangible or difficult-to-quantify damages that would be out of place in a contract claim.

The Court stands by its previous conclusions, both that it had discretion to decline to award costs, and that Cardinal's marginal success warranted that outcome.

## IV.    CONCLUSION

For the reasons discussed above, Cardinal's motion for relief from judgment is DENIED, and the judgment stands as entered.

**IT IS SO ORDERED.**

Dated: June 11, 2020

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

14